Joseph J. Harris, Inc. v. Commissioner.
Joseph J. Harris, Inc. v. Commissioner
Docket No. 5637.
United States Tax Court
1946 Tax Ct. Memo LEXIS 171; 5 T.C.M. (CCH) 480; T.C.M. (RIA) 46129; June 5, 1946
Sydney A. Gutkin, Esq., 744 Broad St., Newark 2, N.J., for the petitioner. Francis X. Gallagher, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined the following deficiencies for the fiscal year ended July 31, 1941: income tax $2,189.19; declared value excess profits tax $1,565.87; and excess profits tax $2,003.45. The deficiencies resulted from the disallowance of certain deductions, two of which are not contested. The first issue relates to two deductions taken by the petitioner corporation for salary and interest owed to its president and sole stockholder, Joseph J. Harris. The issue arises under section 24(c) of the Internal Revenue Code. The second issue arises under section 45 of the Internal Revenue Code. It relates to services performed by petitioner corporation for another corporation, both corporations being controlled by the same interests. Petitioner contests a determination of the Commissioner apportioning part of its expenses to the other corporation, which has resulted in decreasing *173 expenses deducted by petitioner. Petitioner filed its return for the taxable year with the collector for the fifth district of New Jersey. Findings of Fact Petitioner is a New Jersey corporation with principal office located in Jersey City, New Jersey. Its return for the fiscal year ended July 31, 1941, was prepared and its books of account are kept on the accrual basis. Petitioner is engaged in a real estate management and insurance business, the principal activities being collecting rents and leasing property. It acts solely as an agent. Barnet Holding Corporation, hereinafter called Barnet, also a New Jersey corporation, has its office with petitioner. Its return was prepared and its books are kept on the accrual basis, but its fiscal year ends on October 31, 1941. Barnet is engaged in the business of buying, owning, and selling apartment house real estate. Joseph J. Harris is the president, treasurer and sole stockholder of both corporations. He has been in the real estate business since 1922. Issue I On June 24, 1941, petitioner's board of directors adopted the following resolution: The salary of Joseph J. Harris, as President and Treasurer of the Company, shall *174 be fixed at $15,000 for the year ended July 31, 1941. A credit of this amount is ordered to be placed on the books to be drawn on at his option or left on at his option or left on deposit with the Company. Any amount he has heretofore drawn is to be charged against this salary as set up, or the balance remaining of salaries for prior years previously credited to his account. Harris had received a similar salary in prior years. During the taxable year ended July 31, 1941, petitioner paid Harris $7,800 of his salary in cash, at the rate of $150 per week. The balance of his salary was represented by a demand note for $7,200, which was executed on behalf of petitioner and delivered to Harris on July 31, 1941. There was no limitation or condition on the right of Harris to receive payment of the note on demand. Harris accepted the note as payment of the balance of salary due him as of July 31, 1941. An entry was made on petitioner's books as follows: $7,200, notes payable to J.J.H., balance of salary for fiscal year ended July 31, 1941. Harris included the entire amount of $15,000 in his personal return for the calendar year 1941. However, he did not make any demand for payment of *175 the note for $7,200 during 1941. The above note was paid by petitioner after 1941. Although Harris made no effort to collect the $7,200, represented by the note, during 1941, he could have received payment had he wished, within 2 1/2 months after July 31, 1941. He was authorized to sign checks of the petitioner corporation, and it had liquid assets in excess of the amount of the note. The petitioner corporation owed Harris $32,226.79, which represented accruals of salary and interest, and which did not represent any advances of cash to petitioner by Harris. On July 31, 1941, petitioner gave Harris its demand note for $1,933.60, which amount was the interest at 6 percent due on the above stated indebtedness. Harris accepted the note as payment of interest due, and he included the above amount in his gross income on his personal return for the calendar year, 1941. Petitioner paid this note susequent to the year 1941. Harris made no effort to collect payment of this note during 1941, but he could have received payment of the note, had he wished, within 2 1/2 months after July 31, 1941. At the close of the fiscal year ended July 31, 1941, the total indebtendess of petitioner to Harris *176 was $42,210.39. This entire indebtedness was paid by petitioner in installments at various times after September 9, 1943. The balance sheet of petitioner as of the close of the taxable year ended July 31, 1941, was as follows: ASSETS
Cash
$ 3,923.76
Accounts receivable
49,135.86
Depreciable assets, less re-
serve
5,095.49
Total
$58,155.11
LIABILITIES
Accounts payable
$ 3,971.46
Notes payable maturity
less than 1 year
2,200.00
Accrued expenses (taxes,
etc.)
770.58
Due to officer
42,210.39
Common stock
500.00
Surplus
8,502.68
Total
$58,155.11
Petitioner had cash in bank as follows: $3,923.67 on July 31, $9,911.16 on August 31, and $20,872.08 on September 30, 1941. Joseph J. Harris reported his income on the basis of a calendar year. In his return for 1941, he reported total income of $24,775.69, which sum included salaries from only petitioner and Barnet in the total amount of $20,200. In the space provided, it was stated that the return was prepared on the accrual basis. A set of books was opened for Harris on January 1, 1940. The books were kept on the accrual method of accounting. The book entries for 1941 show entries *177 of $15,000, the salary from petitioner; $5,200, the salary from Barnet; and an entry of $4,514.50 for interest. Prior to 1940, no personal books were kept for Harris. His return for 1939 was prepared by referring to the books of petitioner and Barnet, which were kept on the accrual method of accounting. The return filed for 1939 was said, on the return, to be filed on the cash method, but such designation on the return was a typographical error. Joseph J. Harris has never requested permission from the Commissioner to change the method of accounting used in filing his returns. Issue II During its fiscal year ended July 31, 1941, petitioner performed certain services for Barnet Holding Company without any formal contract. Petitioner and Barnet conducted their respective businesses separately, keeping separate books of account and separate bank accounts. Barnet's income for its fiscal year ended October 31, 1941, consisted chiefly of rents from twenty-two properties consisting of sixteen apartment houses and six small buildings containing flats and stores. It reported in its return gross receipts from rents of $142,354.66, and $13,828.10 gain from the sale of a building. Barnet *178 employs only building superintendents, janitors and such other employees as are required in the operation of its properties, in addition to Joseph J. Harris. Barnet paid Harris $5,200 salary and other employees $5,662. Its net income for its fiscal year ended October 31, 1941, was reported to be $15,938. It included in its general expenses $1,500 which it described as "office expense." That sum represented expenses which petitioner allocated to Barnet out of its general business expenses as a charge for collecting rents for Barnet. Petitioner, in its return for the fiscal year ended 1941, reported $1,500 as "other income" under the description "expenses transferred to Barnet Holding Corporation." Petitioner, in its return, reported gross receipts from its business in the amount of $53,222.88, plus the $1,500 "other income" allocated from Barnet, or a total of $54,722.88. Petitioner's total expenses were $47,526.78. These included: Salary of Harris
$15,000.00
Other salaries and wages
18,697.87
Rent
1,440.00
Interest
1,947.97
Taxes
940.88
Contributions
135.00
Depreciation
1,240.15
Auto expense
1,339.29
Advertising
84.62
General expense
74.50
Insurance and bonds
1,131.79
Legal and accounting
280.00
Travelling and entertainment ex-
penses
777.70
Postage
565.29
Stationery and office expenses
2,413.62
Telephone
1,294.35
Dues and licenses
163.75
TOTAL
$47,526.78
*179 The only services which petitioner performed for Barnet were collecting rents, and keeping account of the rent collections. It did not do any management work for Barnet. All of such work was done for Barnet by Harris and he was paid a salary for his services. Harris also did all the leasing and negotiating work for Barnet. He has been in the business of managing properties for clients since 1931. Rents from Barnet's properties were received from tenants through the mails, through direct payment by tenants, and by collection by some of petitioner's employees. During the period in question petitioner collected $137,904.50 in rents from Barnet's tenants. Petitioner collected for other clients, with whom it had agency contracts, $814,101.07, total rents collected being $952,005.57. Petitioner employed rent collectors in the conduct of its business, and they collected rents from Barnet's properties in the course of their general rent collecting work while they were going about town. If Barnet had undertaken to collect rents from its properties it would have employed only one person and he would not have had to devote full time to such collection of rents. He could have been employed *180 for about $30 per week, about $1,500 per year. Petitioner serves its clients, excepting Barnet, under property management contracts which provide for giving many services, as agent, to the client, including the following: The making of repairs to and the taking care of maintenance of properties; the purchasing of materials and supplies in connection therewith; the purchase and installation of new equipment to replace old equipment, such as gas stoves, refrigerators, rugs, carpets and furnishings; the obtaining of competitive bids from contractors for such articles and furnishings; the installation of equipment and making decorations and alterations; the securing of tenants at the best rents obtainable; the listing of vacancies with real estate brokers; the making of leases; the making of detailed monthly statements for the client. Petitioner did not render any of such services to Barnet, but only collected rents for Barnet. It did not submit any statements or reports to Barnet and it did very little bookkeeping for Barnet in connection with the collection of rents. Petitioner did not have any other client for whom it performed such limited services. It is provided, inter alia, *181 in the typical management contract which petitioner enters into with its typical clients as follows: The compensation to be paid by the Company to the Agent for services in connection with the management of said particular property or in the effecting of leases or rentings for said particular property shall be… percent of all rents and income collected from tenants, and… percent of all forfeited rents retained by the Company, which compensation shall be in full for all services performed under the contract. Petitioner charges its typical clients 3 percent to 5 percent of all rents and income collected. Such charge is for all services rendered including the collection of rents. Petitioner, by allocating $1,500 of its expenses to Barnet, charged Barnet, in effect, slightly more than 1 percent of the rents collected. Respondent determined that $6,891.38 of petitioner's expenses for its taxable year ended July 31, 1941, was allocable to Barnet, which resulted in reducing deductions for expenses taken by petitioner in its return in the amount of $5,391.38. The report of the examining agent shows that petitioner's allocation of $1,500 was credited against the sum of $6,891.38, *182 leaving the net amount of $5,391.38 as an addition to petitioner's income. Respondent's agent calculated the sum of $6,891.38 by taking the ratio of total rent collections for Barnet, $137,904.50, to total rent collections by petitioner for all clients, $962,005.57, and applying the resulting 14.5 percentage to petitioner's total expenses of $47,526.78. An allocation of $2,328.42 of petitioner's expenses to Barnet is necessary in order clearly to reflect the income of Barnet and petitioner. Opinion Issue I The question presented under this issue is whether petitioner, a corporation keeping its books on an accrual basis, was precluded by section 24(c)[1] from taking deductions in the fiscal year ending July 31, 1941, for salary and interest owing to its sole shareholder, Harris. Petitioner unconditionally credited the amount of the salary to Harris on its books at the close of the fiscal year. In addition, it gave Harris two promissory notes, one for the salary and the other for the interest. Harris accepted these notes as payment for both of the amounts due him. He reported these amounts as income in his individual income tax return for the calendar year 1941. However, petitioner *183 did not pay the notes in cash within 2 1/2 months of the close of its fiscal year on July 31, 1941. It paid them subsequent to the calendar year 1941. But there was no limitation or condition on the right of Harris to receive payment of the notes on demand. He was the treasurer of petitioner, was authorized to sign checks of petitioner, and could have received payment of the notes had he wished within 2 1/2 months after July 31, 1941. During that period, petitioner had ample and liquid assets in excess of the amount of the notes. *184 There is some dispute in the record and on brief as to whether Harris was entitled to return his income, as he did, for the calendar year 1941 on an accrual basis. However, one who is the president, treasurer and sole shareholder of a solvent corporation with ample liquid assets must include in his income all amounts for salary or interest which are unconditionally credited to him, or for which promissory notes payable on his demand are given to him. This is true whether the receipient of the notes reported his income on an accrual basis or on the basis of cash receipts and disbursements. John I. Chipley, 25 B.T.A. 1103. Accordingly, we think this case clearly falls within the principles enunciated in Michael Flynn Mfg. Co., 3 T.C. 932; Ohio Battery & Ignition Co., 5 T.C. 283, and Musselman HubBrake Co. v. Commissioner, 139 Fed. (2d) 65. Whether or not the notes given by petitioner are to be considered the actual payment of the accrued salary and interest for purposes of section 24(c)(1) ( Musselman Hub-Brake Co. v. Commissioner, supra), it is clear that the salary and interest had to be included in Harris' 1941 *185 gross income under the doctrine of constructive, if not actual, receipt. Michael Flynn Mfg. Co., supra.Before section 24(c) can preclude the deduction for expenses incurred and interest accrued but not paid within 2 1/2 months after the close of the taxable year, all three conditions expressed in the subsections of 24(c) must co-exist. Ohio Battery & Ignition Co., supra.Under subsection (2) the deductions sought by petitioner could be denied to petitioner only if the salary and interest were not properly includible in the gross income of Harris for 1941. Since under any method of accounting which Harris was entitled to employ, the salary and interest had to be returned by him as income for 1941, the condition of subsection (2) for denying the deductions has not been satisfied. We hold, therefore, that petitioner was entitled to deduct from its gross income for the fiscal year ending July 31, 1941, the $7,200 of salary and $1,933.60 of interest accrued and owing to Harris. Issue II Petitioner incurred certain expenses on behalf of Barnet. The problem presented on this phase of the case relates to theproper allocation of these expenses between petitioner *186 and Barnet under section 45[2] in order clearly to reflect the true income of the two companies, both of which were owned solely by Harris. Respondent determined that $6,891.38 of petitioner's expenses for the fiscal year ending July 31, 1941, was properly allocable to Barnet. Rent collections by petitioner for all clients totalled $952,005.57. Petitioner collected $137,904.50 in rents for Barnet. The ratio of rent collections for Barnet to collections for all clients was 14.5 percent. Petitioner incurred total expenses of $47,526.78. *187 Respondent arrived at the sum of $6,891.38 for expenses properly allocable to Barnet by taking 14.5 percent of petitioner's total expenses of $47,526.78. Respondent's formula seems to be compeltely arbitrary in its application to the facts in the instant case. Petitioner did not perform for Barnet the services it performed for all of its other clients. The only services which petitioner rendered to Barnet were the collecting of rents and the keeping of accounts of the rent collections. Barnet could have employed a rent collector who would have adequately performed his duties at an annual salary of $1,500. Petitioner did no management work for Barnet. All such work was done for Barnet by Harris and he was compensated by Barnet at a salary of $5,200 per year. Yet respondent included among petitioner's expenses in the working out of the allocation formula, (1) petitioner's salary to Harris of $15,000 when none of Harris' salary from petitioner represented services to Barnet, (2) other salaries and wages of $18,697.87 when a reasonable value of the rent collection service would have been $1,500, and (3) various other expenses personal to petitioner and unrelated to petitioner's services *188 to Barnet. However, Barnet maintained its office with petitioner. It seems reasonable that a portion of petitioner's expense of maintaining the office was attributable to its activities on behalf of Barnet. Accordingly, we have determined that an additional $828.42 or 14.5 percent of the rent, postage, telephone, stationery and other office expenses in the total amount of $5,713.26, should also be allocated as expenses of Barnet. We hold, therefore, that $2,328.42 of petitioner's expenses should properly be allocated to Barnet under section 45 in order clearly to reflect the true income of Barnet and petitioner for petitioner's fiscal year ending July 31, 1941. Since $1,500 of expenses has already been attributed to Barnet, it is only necessary that an additional $828.42 be so allocated. Decision will be entered under Rule 50. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. * * * * *
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b)↩.
2. SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.↩